IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| STEPHANIE DAVIS AMBUSH, | * |
| Plaintiff, | * |
| v. | * CIVIL NO.: WDQ-10-1953 |
| CITY OF FREDERICK, *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Stephanie Davis Ambush sued the City of Frederick (the "City"), Randy McClement, Richard B. Weldon, Jr., and Kathryn Nicolato (collectively, the "defendants") for due process violations, wrongful discharge, and civil conspiracy. For the following reasons, the defendants' motions to dismiss and strike will be granted.

I. Background[1]

In 1992, Ambush began working for the City as an administrative secretary. Compl. ¶ 8. By 2006, she had become a Community Outreach Specialist. *Id.*

---

[1] For the defendants' motion to dismiss, the well-pled allegations in Ambush's complaint are accepted as true. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

The City's Employee Policies and Procedures (the "Policy") provide, *inter alia*:

(1) Discharge can be for any reason not prohibited by law. In the absence of a specific written agreement, employees may resign at any time and for any reason; and the City reserves the right to terminate employment at any time.
(2) *Discharge*: Discharges are generally caused by an employee's misconduct, delinquency, inefficiency, and/or inability to perform the required work satisfactorily.
(3) When a full-time employee has been issued a suspension, demotion[,] or discharge . . . the employee must submit a written appeal . . . within [30] days[.]
(4) *Layoff*: [I]t may become necessary to reduce the work force due to lack of funds, reorganization, or other reasons. Factors to consider when such occasions arise include past performance [and] seniority. . . . The City shall attempt to transfer potential layoff candidates (if positions are available)[.]
(5) Separation and discharge procedures are only guidelines and do not create a legal contract between the City and its employees. . . . [S]pecified grounds for termination are not all-inclusive since the City reserves the right to terminate employment for any reason.

*Id.*, Ex. B at 29–30; Mot. to Dismiss, Ex. 2 at 78–79.[2]

On April 16, 2010, Weldon[3] sent Ambush a letter that McClement, the City Mayor, had decided to "involuntar[ily] terminat[e her] by reason of layoff," which would "not be portrayed as a disciplinary action." Compl., Ex. A at 1. The letter

---

[2] The Court has considered the Policy pages attached to the motion to dismiss because this document was "referred to in the Complaint" and Ambush "relie[d on it when] bringing the action." *Biospherics, Inc. v. Forbes, Inc.*, 989 F. Supp. 748, 749–50 (D. Md. 1997); *see* Compl. ¶¶ 10–11 (referring to the Policy); *id.*, Ex. B (attaching selected pages from the Policy).

[3] The City Mayor's Executive Assistant. Compl. ¶ 5.

2

stated that because the layoff was an "executive decision of the Mayor," Ambush had no "right to appeal [her] termination." *Id.* at 2.

On May 7, 2010, a letter "to appeal [Ambush's] layoff" was sent by her attorney to Nicolato, the City Human Resources Manager. *Id.*, Ex. C at 1. The letter stated that the City had neither tried to transfer Ambush to another department, nor considered her seniority or performance. *Id.* On May 21, 2010, Nicolato replied that because McClement had laid off employees "in his role as Chief Executive Officer," Ambush had "no right to appeal," and no "hearing [would] be scheduled." *Id.*, Ex. D.

On July 19, 2010, Ambush sued the defendants for procedural and substantive due process violations under the Fifth and Fourteenth Amendments, 42 U.S.C. § 1983, and Articles 19 and 24 of the Maryland Declaration of Rights; wrongful discharge; and civil conspiracy. On August 11, 2010, the defendants moved to dismiss. On August 31, 2010, Ambush opposed that motion. ECF No. 8. On September 13, 2010, the defendants filed their reply. ECF No. 9. On October 14, 2010, Ambush filed an amended complaint. ECF No. 11. On October 15, 2010, the defendants moved to strike the amended complaint. ECF No. 12.

II. Analysis

  A. The Defendants' Motion to Dismiss

    1. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To present a facially plausible complaint, a plaintiff must do more than "plead[] facts that are 'merely consistent with' a defendant's liability"; the facts as pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.

Ct. 1937, 1949 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" the plaintiff is entitled to relief. *Id*. at 1950 (*quoting* Fed. R. Civ. P. 8(a)(2)). "[W]he[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not show[n]--that the pleader is entitled to relief." *Id*. (citation and internal quotation marks omitted). The Court "should view the complaint in a light most favorable to the plaintiff," and "accept as true all well-pleaded allegations," *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "allegations that are mere[] conclus[ions], unwarranted deductions of fact, or unreasonable inferences," *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation and internal quotation marks omitted).

2. Due Process Claims

Count One alleges that the defendants violated Ambush's procedural and substantive due process rights under the Fifth and Fourteenth Amendments, 42 U.S.C. § 1983, and Articles 19 and 24 of the Maryland Declaration of Rights by failing to comply with the Policy when terminating her--that is, they did not consider Ambush's "past performance and seniority," try to transfer her to another department, or give her an appeal hear-

ing. Compl. ¶¶ 10–11, 14–15. In moving to dismiss, the defendants assert that Ambush was an at-will employee and had no property interest in her job. Mot. to Dismiss 3–11.

### a. Fifth Amendment

The Due Process Clause of the Fifth Amendment applies only to federal actors. *Winfield v. Bass*, 106 F.3d 525, 530 n.2 (4th Cir. 1997). Because all the defendants are state actors, *see* Compl. ¶¶ 4–7, Ambush's Fifth Amendment claim must be dismissed.

### b. Fourteenth Amendment

#### i. Procedural Due Process

The first step in reviewing a Fourteenth Amendment due process challenge is to determine "whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). A government employee has a property interest in continued employment "only if he can show a legitimate claim of entitlement to his job under state or local law." *Andrew v. Clark*, 561 F.3d 261, 269 (4th Cir. 2009) (citation and internal quotation marks omitted). In Maryland, an at-will state or local government employee has no "property right in continued public employment." *Elliott v. Kupferman*, 58 Md. App. 510, 520, 473 A.2d 960, 966 (1984). An employer or employee may terminate an at-will relationship for "almost any reason or no reason, at

any time." *Bagwell v. Peninsula Reg. Med. Ctr.*, 106 Md. App. 470, 490, 665 A.2d 297, 307 (1995).

However, even an at-will employee may have an entitlement to continued employment if he can show "rules and understandings, promulgated and fostered by state officials," to justify that entitlement. *Perry v. Sindermann*, 408 U.S. 593, 602–03 (1972). In Maryland, an employment policy that "set[s] forth a required procedure for termination" may be a "contractual undertaking[] by the employer" enforceable by the employee.[4] This exception to Maryland's at-will doctrine protects an employee who has "justifiably relied" on a policy that limits an employer's discretion to terminate. *See Bagwell*, 106 Md. App. at 494, 665 A.2d at 309 (citation and internal quotation marks omitted). But such reliance is unjustified when "contractual intent has been expressly disclaimed." *Castiglione v. Johns Hopkins Hosp.*, 69 Md. App. 325, 341, 517 A.2d 786, 793–94, *cert. denied*, 309 Md. 325, 523 A.2d 1013 (1987).

1. Ambush Was an At-Will Employee

The Policy states that absent "a specific written agreement, employees may resign at any time and for any reason[,] and

---

[4] *Staggs v. Blue Cross of Md., Inc.*, 61 Md. App. 381, 384–85, 388, 392, 486 A.2d 798, 799–801, 803 (1985) (at-will employment relationship was contractually "modified" by a company policy stating that the employee could only be dismissed "for cause" and after receiving counseling sessions), *cert. denied*, 303 Md. 295, 493 A.2d 349 (1985).

7

the City reserves the right to terminate employment at any time." Mot. to Dismiss, Ex. 2 at 78–79.

Ambush has neither alleged a "specific written agreement," *id.*, nor disputed the defendants' contention that she was an at-will employee, *see generally* Compl.; ECF No. 8. Thus, her employment was at-will. *See Bagwell*, 106 Md. App. at 490, 665 A.2d at 307.

### 2. The Policy Did Not Entitle Ambush to Continued Employment

Ambush has alleged that the defendants did not comply with the Policy when laying her off because they failed to: consider her past performance and seniority, try to transfer her, or give her an appeal hearing. Compl. ¶¶ 14–15. The Policy's termination procedures state that when it is "necessary to reduce the work force," "[f]actors to consider when [making a 'layoff'] include past performance [and] seniority," and the "City shall attempt to transfer potential layoff candidates to other departments (if positions are available)." Mot. to Dismiss, Ex. 1 at 78. Only "suspen[ded], demot[ed], or discharge[d]" employees may appeal a termination. Compl., Ex. B at 29. The Policy's "[s]eparation and discharge procedures are only guidelines and *do not create a legal contract* between the City and its employees." Mot. to Dismiss, Ex. 1 at 79 (emphasis added).

Because the Policy states that it does "not create a legal contract," *id.*, Ambush "cannot reasonably assert justifiable reliance" on its terms. *Bagwell*, 106 Md. App. at 494, 665 A.2d at 309. Although the defendants neither tried to transfer her, nor considered her past performance and seniority, "[the City] was entitled to terminate [her] without complying with the terms of the [Policy]."[5] Further, because Ambush was laid off instead of discharged, the Policy never allowed her to appeal.[6]

Thus, because the Policy disclaimed a contractually "required procedure for termination," *Staggs*, 61 Md. App. at 392, 486 A.2d at 803–04, it did not foster "rules and understandings" that would justify an entitlement to continued employment, *Perry*, 408 U.S. at 602–03.[7] Because Ambush was an at-will

---

[5] *Bagwell*, 106 Md. App. at 489, 494, 665 A.2d at 307, 309 (employment handbook's disclaimer that it did not "'serve as a contract'" rendered terminated at-will employee's breach-of-contract claims "merit[less]"); *see also Castiglione,* 69 Md. App. at 329, 337–41, 517 A.2d at 787, 792–94.

[6] *See* Compl., Ex. A at 1 (letter that Ambush was being "involuntar[ily] terminat[ed] by reason of layoff"); Mot. to Dismiss, Ex. 1 at 79 (Policy provision that "[d]ischarges are generally caused by[, *inter alia*,] an employee's misconduct"); Compl., Ex. B at 29 (Policy provision that "suspen[ded], demot[ed], or discharge[d]" employees may appeal).

[7] *Compare Perry*, 408 U.S. at 600–03 (non-tenured professor sufficiently alleged right to continued employment because faculty guide stated that a professor should "'feel that he has permanent tenure'" if his "'services are satisfactory'"), *with* Mot. to Dismiss, Ex. 2 at 79 (Policy contains "only guidelines," and "the City reserves the right to terminate employment for any reason").

employee who had no property interest in continued employment, her Fourteenth Amendment procedural due process claim must be dismissed.[8]

      ii. Substantive Due Process

To state a substantive due process claim, the plaintiff must establish that the state deprived him of a "property interest" in an action "so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." *Tri Cnty. Paving, Inc. v. Ashe Cnty.*, 281 F.3d 430, 440 (4th Cir. 2002). Because Ambush has not shown a property interest in continued employment, *see supra* Part A.2.b.i, this claim must be dismissed.[9]

    c. Section 1983

Under 42 U.S.C. § 1983, a plaintiff may sue to redress constitutional violations. The statute "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere, [including] due process . . . violation[s

---

[8] *See Luy v. Balt. City Police Dep't*, 326 F. Supp. 2d 682, 689–90 (D. Md. 2004) (police officer who was an "at-will employee at the time of his termination" could not "claim any Fourteenth Amendment due process protection" (*citing Elliott*, 58 Md. App. at 520, 473 A.2d at 966)).

[9] *See Disher v. Weaver*, 308 F. Supp. 2d 614, 626 (M.D.N.C. 2004) ("Since [at-will plaintiff] held no property interest in her job, her termination did not deprive her of procedural or substantive due process." (*citing Tri-Cnty. Paving*, 281 F.3d at 436, 440)).

10

under] the Fourteenth Amendment." *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985). Because Ambush has not established a Fourteenth Amendment due process violation, *see supra* Part A.2.b.i–ii, this claim must be dismissed.[10]

        d. Articles 19 and 24 of the Maryland Declaration of Rights

"[A]rticles 19[11] and 24[12] of the Maryland Declaration of Rights [are] the State law counterparts to the due process clause of the Fourteenth Amendment," and have "long been held to provide the same, but no greater, rights and protection." *Durham v. Fields*, 87 Md. App. 1, 9, 11, 588 A.2d 352, 356–57 (1991). Because Ambush has not established a Fourteenth Amend-

---

[10] *See Henry v. Den. Technical Coll.*, 869 F.2d 593, 593 (4th Cir. 1989) (at-will employee's Fourteenth Amendment and § 1983 claims "fail[ed] as a matter of law" because he had not established "any property interest in his employment").

[11] Article 19 states "[t]hat every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the Land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the Land." Md. Const. Declaration of Rights, art. 19.

[12] Article 24 states "[t]hat no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." Md. Const. Declaration of Rights, art. 24.

ment due process claim, *see supra* Part A.2.b.i–ii, these claims must be dismissed.[13]

Accordingly, because Ambush has failed to state a claim as to each due process allegation, Count One must be dismissed.

3. Wrongful Discharge--Breach of Policies and Procedures Claim

Count Two alleges that Ambush "continued her employment based upon her reliance" on the Policy, and that the defendants' failure "to abide by the [Policy's] provisions . . . constituted a breach of the policies and procedures and resulted in a wrongful discharge." Compl. ¶¶ 19-20. In moving to dismiss, the defendants assert that no such claim exists. Mot. to Dismiss 11-14.

Maryland recognizes an at-will employee's wrongful discharge claim only when the termination violated a "clear mandate of public policy," *Adler v. Am. Standard Corp.*, 291 Md. 31, 47, 432 A.2d 464, 473 (1981), which Count Three attempts to plead.[14] Because Count Two has not alleged the public policy that Ambush's termination violated, it must be dismissed.

---

[13] *See Booth v. Maryland*, 337 F. App'x 301, 313 (4th Cir. 2009) (plaintiff's Articles 19 and 24 allegations failed because he had not established a federal due process claim).

[14] Count Three alleges that Ambush's termination violated the Policy, which "constitute[s] an expression of public policy" that terminated employees "be given access to a review hearing," and that their "performance and service to the City be recognized." Compl. ¶ 23-24.

4. Wrongful Discharge--Violation of Public Policy Claim

Count Three alleges: (1) "the provisions of the [Policy] constitute an expression of public policy" that the City is to recognize laid-off employees' "performance and service," and give them a "review hearing"; and (2) Ambush's termination "in violation of the [Policy] vis-à-vis seniority, transfer, and appeal rights was a wrongful discharge in contravention of public policy as reflected by those provisions." Compl. ¶¶ 23–24. In moving to dismiss, the defendants assert that the Policy does not express Maryland's public policy. Mot. to Dismiss 14–16.

A terminated at-will employee may sue for wrongful discharge if "the motivation for the discharge contravene[d] some clear mandate of public policy." *Adler*, 291 Md. at 47, 432 A.2d at 473. Because the legislature is normally responsible for declaring the state's public policy, Maryland has "confine[d]" wrongful discharge claims to "clear and articulable principles of law," such as "prescribed constitutional or statutory mandates."[15]

---

[15] *Wholey v. Roebuck*, 370 Md. 38, 52–54, 59, 803 A.2d 482, 490–91, 494 (2002) (recognizing wrongful discharge claim for "employees who are discharged for reporting suspected criminal activity"; "statutory provisions [in Maryland's Criminal Law Article]" expressed a "clearly definable public policy goal" that the legislature seeks to protect those "who report [such] activity").

13

Although Ambush has alleged that the Policy "constitute[s] an expression of public policy" that the City should recognize laid-off employees' seniority, performance, and transfer and appeal rights, *see* Compl. ¶¶ 23–24, these are "only [internal employment] guidelines," Mot. to Dismiss, Ex. 1 at 79, not "clear and articulable principles of law," *Wholey*, 370 Md. at 51, 803 A.2d at 490. Because Ambush has not "point[ed] to any specific statutory provision . . . or other existing rule of law that particularly prohibits the claimed misconduct," *Adler*, 291 Md. at 46, 432 A.2d at 472,[16] Count Three must be dismissed.

5. Civil Conspiracy Claim

Count Four alleges that the defendants "acted in consort" to: (1) "wrongfully and unlawfully terminate [Ambush's] employment" by failing to "consider[] her seniority" or "attempt to transfer" her; and (2) "unlawfully deny [Ambush] an appeal," which "further[ed] her unlawful termination." Compl. ¶¶ 27–28. In moving to dismiss, the defendants assert that there is no

---

[16] In *Adler*, an at-will employee asserted that he was discharged for intending to report company misconduct. *Adler*, 291 Md. at 34, 432 A.2d at 467. He argued that bribery and falsifying records were "so clearly against public policy that he need not identify any statute or rule of law." *Id.* at 43, 432 A.2d at 471. The court found that he had not "state[d] a cause of action for [wrongful] discharge"; he had not indicated "whether any declared mandate of public policy was violated." *Id.* at 47, 432 A.2d at 473; *see also Terry v. Legato Sys., Inc.*, 241 F. Supp. 2d 566, 570 (D. Md. 2003) (plaintiff failed to state a Maryland wrongful discharge claim because she had not "cit[ed] any case, statute[,] or regulation" establishing the public policy allegedly violated).

14

independent cause of action for civil conspiracy. Mot. to Dismiss 16.

Civil conspiracy in Maryland is "not a separate tort"; the "existence of underlying tortious activity" must be alleged.[17] Because Ambush has failed to establish her wrongful discharge claims, *see supra* Part A.3-4, Count Four must be dismissed.

Because Ambush has failed to state a claim as to each Count, the defendants' motion to dismiss must be granted.

B. The Defendants' Motion to Strike First Amended Complaint

Under Fed. R. Civ. P. 15(a)(1), a party may amend its pleading "once as a matter of course" within 21 days after serving it or being served with a responsive pleading or Rule 12(b) motion. Otherwise, the party may amend "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).[18] Leave should be denied if the amendment would be "futile." *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008).

---

[17] *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 189-90, 199, 665 A.2d 1038, 1045, 1049 (1995) (civil conspiracy claim properly dismissed because the "underlying fraud" had not been adequately alleged); *see also Clark v. Md. Dep't of Pub. Safety and Corr. Servs.*, 247 F. Supp. 2d 773, 777 (D. Md. 2003).

[18] *Whitehead v. Viacom*, 233 F. Supp. 2d 715, 719 (D. Md. 2002) (striking amended complaint that was made without leave).

The defendants moved to dismiss on August 11, 2010. On October 14, 2010, Ambush filed an Amended Complaint without permission of the defendants or the Court. ECF No. 11. The Amended Complaint added to the Statement of Facts:

(1) McClement and Weldon made the termination decision, approved by Nicolato.

*Id.* ¶ 10.

(2) In April and May 2010 meetings, McClement "indicated that [Ambush] and other laid-off employees were released based solely upon whether their job functions could be absorbed by another City employee, and that he did not take employee seniority into consideration in making the termination decisions."

*Id.* ¶ 11.

(3) Before Ambush was laid off, the City had "re-employed [12 retired] employees," and when asked whether they were "considered in the layoff, [McClement] responded that [they] were a 'protected class.'"

*Id.* ¶ 12.

(4) The Policy states that a City employee "may file a written appeal of discharge," which Ambush did May 7, 2010.

*Id.* ¶ 14.

The Amended Complaint added to Counts One, Three, and Four:

When terminating Ambush in violation of the Policy, the defendants acted willfully, maliciously, recklessly, and grossly negligent.

*See id.* ¶¶ 18, 28, 31–32.

On October 15, 2010, the defendants filed an unopposed motion to strike the Amended Complaint as untimely and futile. ECF No. 12 at 1.

Had Ambush sought leave to amend under Fed. R. Civ. P. 15(a)(2), leave would have been denied as futile; the new allegations do not cure her original complaint's failure to state a claim. McClement's statement that he did not consider seniority--a Policy guideline--fails to demonstrate Ambush's property interest in continued employment; the City was "entitled to terminate [her] without complying" with the Policy. *Bagwell*, 106 Md. App. at 489, 494, 665 A.2d at 307, 309; *see also supra* Part A.2.b.

Further, Ambush's new allegations that the defendants acted willfully, maliciously, recklessly, and grossly negligent when failing to follow the Policy do not fix her Due Process, Wrongful Discharge, or Civil Conspiracy Claims; alleging these states of mind does not demonstrate a property interest in continued public employment, state a public policy mandate, or establish underlying tortious activity.[19] The defendants' motion to strike will be granted.

III. Conclusion

For the reasons stated above, the defendants' motions to dismiss and strike will be granted.

| January 21, 2011 | _____/s/_____ |
|---|---|
| Date | William D. Quarles, Jr. |
|  | United States District Judge |

---

[19] ECF No. 11 ¶¶ 18, 28, 31–32; *see Elliott*, 58 Md. App. at 520, 473 A.2d at 966; *Adler*, 291 Md. at 47, 432 A.2d at 473; *Alleco*, 340 Md. at 189–90, 199, 665 A.2d at 1045, 1049.